UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RANDAL DILLON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:21-CV-1204-ACL |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM**

Plaintiff Randal Dillon brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Dillon's severe impairments, he was not disabled as he was capable of performing work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I.   Procedural History

Dillon filed his application for benefits on July 2, 2019.   (Tr. 249.)   He claimed he became unable to work on December 31, 2018, due to arthritis, spinal stenosis, status-post spinal

fusion, pain in both knees, carpal tunnel syndrome, and depression.   (Tr. 17, 215.)   Dillon was

46 years of age at his alleged onset of disability date.   (Tr. 21.)   His application was denied

initially.   (Tr. 109.)   Dillon's claim was denied by an ALJ on December 14, 2020.   (Tr. 11-22.)

On August 10, 2021, the Appeals Council denied Dillon's claim for review.   (Tr. 1-4.)   Thus,

the decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§

404.981, 416.1481.

In this action, Dillon first argues that the "RFC is not based on some medical

evidence/the RFC is not supported by substantial evidence."   (Doc. 24 at 3.)   He next argues

that the "decision fails to properly evaluate medical opinion evidence."   *Id.* at 6.   Finally, Dillon

argues that the decision "lacks a proper pain evaluation."   *Id.* at 12.

## II.   The ALJ's Determination

The ALJ first found that Dillon met the insured status requirements of the Social Security

Act through June 30, 2024.   (Tr. 13.)   He stated that Dillon has not engaged in substantial

gainful activity since his alleged onset date.   *Id.*   In addition, the ALJ concluded that Dillon had

the following severe impairments: pseudoarthrosis, osteoarthritis, lumbar degenerative disc

disease status-post surgeries, sciatica, left meniscus tear status-post arthroscopy, major

depressive disorder, adjustment disorder, and anxiety disorder.   *Id.*   The ALJ found that Dillon

did not have an impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments.   (Tr. 14.)

As to Dillon's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform a range of sedentary work as defined in 20 CFR
> 404.1567(a).   Specifically, the claimant is able to lift up to ten

> pounds occasionally.   He is able to stand/walk for about two hours
> and sit for up to six hours in an eight-hour workday, with normal
> breaks.   He is unable to climb ladders/ropes/scaffolds but is
> occasionally able to climb ramps/stairs, balance, stoop, kneel,
> crouch, and crawl.   He is unable to tolerate exposure to
> unprotected heights and use of dangerous moving machinery.   He
> is able to perform simple, routine, and repetitive tasks in a work
> environment free of fast-paced production requirements, involving
> only simple work-related decisions and routine workplace changes.

(Tr. 16.)

The ALJ found that Dillon was unable to perform his past work as an ironworker, but was capable of performing other jobs existing in significant numbers in the national economy, such as document preparer, administrative support worker, and surveillance system monitor. (Tr. 20-22.)   The ALJ therefore concluded that Dillon was not under a disability, as defined in the Social Security Act, from December 31, 2018, through the date of the decision.   (Tr. 22.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability
> insurance benefits protectively filed on July 2, 2019, the claimant
> is not disabled under sections 216(i) and 223(d) of the Social
> Security Act.

*Id.*

## III.   Applicable Law

### III.A.   Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This

"substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."   *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.      The credibility findings made by the ALJ.

2.      The plaintiff's vocational factors.

3.      The medical evidence from treating and consulting physicians.

4.      The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.      Any corroboration by third parties of the plaintiff's impairments.

6.      The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v.*

*Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as

a whole, we must affirm the administrative decision, even if the record could also have supported

an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal

quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974,

977 (8th Cir. 2003).   Put another way, a court should "disturb the ALJ's decision only if it falls

outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015)

(citation omitted).

**III.B.   Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or that has lasted or can be expected to last for a continuous period of not less than

twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant

has a disability when the claimant is "not only unable to do his previous work but cannot,

considering his age, education and work experience engage in any kind of substantial gainful

work which exists … in significant numbers in the region where such individual lives or in

several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social

Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First,

the Commissioner will consider a claimant's work activity.   If the claimant is engaged in

substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements"

of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."   *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though

the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.   The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.   *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).   If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent."   20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).   The Commissioner must then rate the degree of functional loss resulting from the impairments.   *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).   Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.   *See id.*   Next, the Commissioner must determine the severity of the impairment based on those ratings.   *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).   If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.   *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).   This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.   *See id.*   If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment.   *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

# IV.   Discussion

Dillon argues that the ALJ erred in determining his RFC, evaluating the medical opinion evidence, and in evaluating his pain.   The undersigned will discuss Dillon's claims in turn, beginning with Dillon's subjective complaints of pain.

## 1.   Subjective Complaints

Plaintiff argues that the ALJ erred by failing to provide a sufficient explanation "regarding plaintiff's credibility or identify any particular inconsistences that would warrant a complete disregard of plaintiff's testimony regarding pain."   (Doc. 24 at 14.)

As an initial matter, Social Security Ruling 16-3p[1] eliminated the word "credibility" from the analysis of subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence.   SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529.   The Rule incorporates the familiar factors from *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) that previously guided an ALJ's analysis of subjective complaints, including: objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency and intensity of the symptoms (*i.e.*, pain); (3) precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions.   *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019).   If the evidence as a whole "undermines" or "cast[s] doubt on" a claimant's testimony, an ALJ may decline to credit a claimant's subjective complaints.   *Id.*

The ALJ is not mechanically obligated to discuss each of the above factors, however, when rejecting a claimant's subjective complaints, the ALJ must make an express determination

---

[1]The revised Ruling became effective on March 27, 2017.   It applies to determinations or decisions made by the Social Security Administration on or after March 28, 2016.

detailing his or her reasons for discrediting the testimony, and the ALJ's assessment must be based on substantial evidence. *Vick v. Saul*, No. 1:19 CV 232 CDP, 2021 WL 663105, at *8 (E.D. Mo. Feb. 19, 2021) (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Grba-Craghead v. Astrue*, 669 F. Supp. 2d 991, 1008 (E.D. Mo. 2009)).   On review by the court, "[c]redibility determinations are the province of the ALJ." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)).   The court defers to the ALJ's determinations "as long as good reasons and substantial evidence support the ALJ's evaluation of credibility." *Id.*

The ALJ summarized Dillon's testimony regarding his limitations as follows, in relevant part:

> The claimant alleged disability due to limitations imposed by arthritis, spinal stenosis, pain in both knees, and depression.   At the hearing, he testified that he is unable to work due to pain in his feet.   He reported that he cannot stand or sit for more than 20 minutes and can walk only two to three blocks at a time.   He stated that he uses a cane when walking long distances but that it was not prescribed. He reported that he has a stabbing pain in his low back and bottom that goes down both legs.   He testified that he is unable to bend his knees without soreness and burning.   The claimant further testified that he has problems focusing and takes medication for anxiety.

(Tr. 17.)

The ALJ determined that, although Dillon's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.*   The Court finds that the ALJ appropriately considered Dillon's subjective allegations.

**1.a.   Physical Impairments**

The ALJ first discussed the medical evidence regarding Dillon's physical impairments, as follows:

 The ALJ stated that Dillon underwent the following surgical procedures resulting from an August 2017 work injury, prior to his alleged onset of disability date: a lumbar fusion at L5-S1 in January 2018, a lumbar fusion revision in August 2018, and an arthroscopic chondroplasty of the left patella in May 2018.   (Tr. 17.)

At a January 2019 physical therapy visit, Dillon reported that his buttocks felt like they were "on fire," and he was sore after sitting in his truck on the way to his visit.   (Tr. 17, 375.) The therapist noted that Dillon required frequent breaks between his exercises, but was able to perform most without difficulty.   *Id.*

On July 15, 2019, Donald A. deGrange, M.D., the orthopedist that performed Dillon's revision surgery, performed an elective hardware removal and decompression of the spinal stenosis at L4-L5.   (Tr. 17, 392.)   Dr. deGrange had ordered a CT myelogram in January 2019 due to Dillon's complaints of sporadic urinary difficulty and sporadic pain in his low back and right buttocks down to his right leg.   (Tr. 518-19.)   The CT myelogram revealed the presence of a solid fusion at L5-S1, but the development of stenosis above it at L4-5.   (Tr. 527-28.)   The day after the procedure, Dillon reported a significant increase in leg strength and decrease in back pain, and was walking "all over the hospital" with a normal gait.   (Tr. 17, 544, 397-98.)

On August 15, 2019, Dillon complained of a fever and discharge from his incision while he "was on vacation down at the river."   (Tr. 17, 547.)   He was diagnosed with a postoperative infection, for which he was given an antibiotic.   (Tr. 547.)   Two weeks later, the incision looked much better and the pain in his legs was "gone."   (Tr. 17, 619.)   Dillon reported a "very

strange sensation that he has always referred to as ice picks in his [buttocks]," which persisted but was somewhat better.   *Id.*

Dillon underwent a vocational rehabilitation evaluation (via video due to the COVID-19 pandemic) performed by Delores Gonzalez, M.Ed., on September 15, 2020.   (Tr. 17, 276.) Dillon reported that he uses a non-prescribed cane and has difficulty walking.   (Tr. 17, 278.) He complained of constant, dull to sharp pain in his mid-back and stabbing, spasms, and radiation down his left leg to his calf and occasionally to his feet.   *Id.*   He also reported a constant, dull to sharp pain in his bilateral knees.   *Id.*   Dillon indicated that he previously enjoyed hunting and he had gone hunting on one occasion in 2019.   (Tr. 17, 278.)   Ms. Gonzalez noted that Dillon appeared sleepy during his interview, and exhibited problems with focus, memory, and concentration.   (Tr. 322.)

On October 24, 2019, Dillon reported that his leg symptoms were completely resolved but he still had stabbing back pain leftover from his first surgery (Tr. 18, 653.)   Dr. deGrange noted that the pain was clearly not mechanical due to the fact that he "does a lot of activities," and has no problems until he has completed the activity.   (Tr. 653.)   On examination, his incision was completely healed and his straight leg raise testing was negative.   (Tr. 19, 653.) On November 21, 2019, Dillon reported that he started experiencing pain around his waist and into his groin about three weeks prior.   (Tr. 18, 1032.)   Dr. deGrange noted no abnormalities on examination.   *Id.*   When Dillon asked about stenosis, Dr. deGrange advised him that the "very mild clinically insignificant" findings on the CT myelogram at L3-4 would not explain Dillon's symptoms.   (Tr. 1032.)   He restarted Dillon on a single dosage of Percocet[2]  per day and

---

[2]Percocet is a combination of opioid and non-opioid pain reliever indicated for the treatment of moderate to severe pain.   S*ee* WebMD, http://www.webmd.com/drugs (last visited March 23, 2023).

indicated that no additional surgery was contemplated.   (Tr. 18, 1032.)   On January 30, 2020,

Dillon continued to complain of intermittent low back pain, almost always after activity.   (Tr.

18, 1035.)   He reported that the shooting pains in his legs were gone, but he still experienced a

sharp, stabling sensation in his buttocks.   *Id.*   No abnormalities were noted on examination.

(Tr. 1036.)   Dr. deGrange found that Dillon had reached maximum medical improvement, and

imposed permanent restrictions based upon a functional capacity evaluation, including a 50-

pound lifting limit.   (Tr. 18, 1036.)   Dr. deGrange renewed his opinion regarding Dillon's

permanent restrictions in a letter dated April 29, 2020.   (Tr. 1038.)

Dillon presented to his primary care provider on April 15, 2020, with complaints of

cough, fever, and shortness of breath.   (Tr. 18, 973.)   On examination, Dillon's gait was

normal, and he exhibited pain with range of motion of the back.   *Id.*

Dillon saw Dr. deGrange for follow-up on May 27, 2020, at which time he reported he

was doing well and could do "most of what he needs to do throughout the day," but he "pays the

price" each evening with two hours of fairly severe pain in the low back, typically in the

buttocks.   (Tr. 18, 1052.)   He did not have any low back pain or leg symptoms.   *Id.*   Straight

leg testing was negative, and no motor or sensory deficits were found.   *Id.*   Dr. deGrange

advised Dillon that additional testing was not warranted, as there was no pathology responsible

for his pain pattern that alternates between the right and left side of his back.   (Tr. 1052.)   On

September 17, 2020, Dillon reported worsening back pain due to increased activity.   (Tr. 18,

1054.)   He had just completed clearing three acres of brush and had significant back pain.   *Id.*

No abnormalities were noted on examination.   (Tr. 1054.)   Dr. deGrange refilled Dillon's pain

medications.   *Id.*   He indicated that Dillon was applying for disability benefits and had asked

him to complete a medical source statement   *Id.*

The ALJ concluded that this medical evidence is not supportive of disability.   She stated that, following his surgeries, Dillon's treatment has been conservative and the objective findings "relatively benign."   (Tr. 20.)

An ALJ may consider improvement with treatment when evaluating the claimant's subjective complaints.   *See* § 404.1529(c)(3)(v) (stating treatment for relief of symptoms may be considered when evaluating the intensity and persistence of a claimant's symptoms); *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (stating "impairments that are controllable or amendable to treatment do not support a finding of total disability") (internal quotation marks omitted).

The record supports the ALJ's finding that Dillon's symptoms improved following surgery.   Dr. deGrange's examinations following Dillon's July 2019 surgery were typically normal, including negative straight leg raising test and no new motor or sensory deficits.   The ALJ did not find that Dillon had no symptoms at all following surgery, but found that his documented improvement was inconsistent with the presence of disabling pain or limitations. The ALJ did not err in making this finding.

### 1.b.   Mental Impairments

With regard to Dillon's mental symptoms, the ALJ noted that the only treatment he received was provided by his primary care provider, who diagnosed him with anxiety and placed him on Sertraline[3] in February 2019.   (Tr. 18, 966.)   He was continued on this medication at his follow-up visit, and his affect and demeanor were noted to be appropriate.   (Tr 18, 973.) Dillon never received treatment from a mental health specialist.   (Tr. 18.)

---

[3]Sertraline is indicated for the treatment of depression and anxiety.   S*ee* WebMD, http://www.webmd.com/drugs (last visited March 23, 2023).

Dillon underwent a mental consultative examination performed by Jerry Cunningham, Psy.D., on January 16, 2020.   (Tr. 18, 664-70.)   Dillon reported experiencing depression every day the past few months related to not working and "losing everything."   (Tr. 18, 664.)   He indicated he lacks motivation, wants to be alone, and cries a moderate amount.   *Id.*   Dillon did not have anger or anhedonia, and reported he gets along well with others.   *Id.*   He had no suicidal ideations, homicidal ideations, hallucinations, or delusions.   *Id.*   On examination, he reported an "okay" mood and his affect was dysphoric and congruent with his reported mood; his speech was adequate and not tangential; he was cooperative; he had no problems following directions; and he had no memory difficulties.   (Tr. 666-68.)   Dr. Cunningham diagnosed Dillon with mild major depressive disorder.   (Tr. 670.)

The ALJ found that Dillon's allegation of a disabling mental impairment was not consistent with the medical evidence.   (Tr. 18.)   This finding is supported by the evidence discussed above, which reveals Dillon received minimal treatment for his mental impairments and few abnormalities were noted on examination.   The ALJ properly considered Dillon's infrequent treatment in assessing his subjective allegations.   *See Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) ("Infrequent treatment is also a basis for discounting a claimant's subjective complaints.").

### 1.c.  Activities of Daily Living

Next, the ALJ discussed Dillon's statements regarding his daily activities and found they were inconsistent with his subjective allegations of pain.   For example, she noted that despite testifying that he is unable to stand longer than twenty minutes or walk more than three blocks, he reported that he cleared three acres of brush in September 2020.   (Tr. 18, 1054.)   When asked about this discrepancy at the hearing, Dillon testified that he was on a tractor with his

father to clear the brush and only uses a tractor about twice a year.   (Tr. 18, 57.)   The medical evidence also reveals that Dillon went on a vacation at the river in August 2019 (Tr. 547), engaged in some deer hunting after his alleged onset of disability (Tr. 278), and could do almost anything that needs to be done throughout the day, but later experiences pain in his buttock cheeks (Tr. 1052).   Additionally, Dillon testified at the hearing that he is able to drive, prepare meals, lift a case of water, shop for groceries, watch television, and read.   (Tr. 54-56.)

Though a person's ability to engage in chores or hobbies does not demonstrate an ability to work, *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000), it is proper for an ALJ to consider a claimant's activities for purposes of assessing the credibility of his claims of incapacity. *Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018); *see also Wright v. Colvin,* 789 F.3d 847, 854 (8th Cir. 2015) (noting the Eighth Circuit has found activities such as driving, shopping, bathing, and cooking were inconsistent with disabling pain); *Roberson v. Astrue,* 481 F.3d 1020, 1025 (8th Cir. 2007) (affirming the ALJ's analysis of claimant's subjective statement of symptoms where the claimant took care of her child, drove, fixed simple meals, performed housework, shopped, and handled money).   The ALJ properly found Dillon's daily activities were inconsistent with a total inability to work.

In sum, the ALJ thoroughly reviewed Dillon's testimony and other evidence of record in a manner consistent with *Polaski*, and articulated specific reasons to find his symptoms and limitations were inconsistent with the record.   Because this determination is supported by good reasons and substantial evidence on the record as a whole, the undersigned must defer to it. *Julin*, 826 F.3d at 1086.

## 2.  Opinion Evidence and RFC

Dillon argues that the ALJ erred in determining his RFC.   Specifically, he contends that

the only medical evidence that supports the RFC is a portion of a consultative examiner's opinion.   He further argues that, in determining his RFC, the ALJ failed to properly evaluate the medical opinion evidence.

A claimant's RFC is the most he can do despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).   It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record.   20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946.   Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician.   *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).   "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion." *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).

The ALJ found that Dillon had the RFC to perform sedentary work, with the following additional limitations: unable to climb ladders/ropes/scaffolds but is occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; unable to tolerate exposure to unprotected heights and use of dangerous moving machinery; and able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes.   (Tr. 16.)   In making this determination, the ALJ assessed the consistency of Dillon's subjective complaints with the record as discussed above.   The ALJ also evaluated the medical opinion evidence.

A "medical opinion" is a statement from a medical source about what an individual can still do despite his impairments, and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work.   20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).   Under the revised Social Security regulations,[4] the agency "[w]ill not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."   20 C.F.R. §§ 404.1520c(a), 416.920c(b)(2).   Instead, the ALJ must assess the persuasiveness of all medical opinions and prior administrative medical findings[5] using a number of factors, including 1) the supportability of the opinion with objective medical evidence and explanations; 2) the consistency of the opinion with evidence from other medical and nonmedical sources; 3) the relationship of the provider to the claimant, including the length, nature and frequency of treatment; 4) the specialization of the provider; and 5) other factors, including the source's familiarity with the Social Security guidelines.   *See* 20 C.F.R. § 404.1520c.   ALJs must explain how they considered the factors of supportability and consistency in their decisions but are not statutorily required to discuss the other factors.   20 C.F.R. § 404.1520c(b)(2).

Dillon argues that the ALJ did not properly evaluate any of the medical opinions provided in this matter.

---

[4]The new regulations are applicable to Dillon's claims because he filed his appeal after March 27, 2017.   *See* 20 C.F.R. §§ 404.1520c, 416.920c.

[5]"Prior administrative medical findings" are findings, other than the ultimate determination on whether a claimant is disabled, abut medical issues made by the consultants at a prior level of review in the claimant's current claim based on their review of the evidence.   81 Fed. Reg. at 62,564; 20 C.F.R. § 404.1513(a)(5) (2017).

The ALJ first evaluated the prior administrative findings.   On November 26, 2019, Harry Cole, M.D., authored a Physical Residual Functional Capacity Assessment, in which he found Dillon was capable of performing a range of light work.   (Tr. 86-89.)   On April 29, 2020, Michael O'Day, D.O., also found that Dillon could perform a range of light work.   (Tr. 103-04.)   The ALJ stated that the opinions of Drs. Cole and O'Day were "not persuasive."   (Tr. 19.)   She explained that the evidence shows that Dillon has undergone three lumbar spine surgeries as well as knee surgery and "continued to report a sharp pain in his buttocks after activity, which supports that he is limited to sedentary exertional work."   *Id.*   Similarly, the ALJ found the opinions of the state agency psychological consultants that Dillon does not have mental limitations "unpersuasive."   (Tr. 19, 84-85, 97-99.)   The ALJ stated that the "evidence of the claimant's dysphoric mood and affect during his consultative examination and difficulty concentrating during his evaluation is consistent with the finding that the claimant would have some limitations in managing or adapting himself as well as in concentrating, persisting, and maintaining pace."   (Tr. 19.)

The ALJ's decision reflects that she properly considered the prior administrative medical findings.   The ALJ ultimately found Dillon was *more limited* than found by the state agency medical consultants.   As such, any error in the ALJ's failure to elaborate on her analysis of the prior administrative findings was harmless.

The ALJ next discussed the vocational evaluations performed by Tim Kaver in August 2019, and Delores Gonzalez in September 2020.   (Tr. 19.)   Mr. Kaver expressed the opinion that Dillon lacked transferable skills into sedentary level occupations and was, therefore, permanently and totally disabled.   (Tr. 19, 910.)   Ms. Gonzalez similarly found that Dillon was not currently capable of any competitive work.   (Tr. 19, 322.)   The ALJ did not provide

articulation regarding this evidence, noting it was "inherently neither valuable nor persuasive to the issue of whether the claimant is disabled in accordance with 20 CFR 404.1520b." (Tr. 19.) She stated that she did nonetheless consider all the evidence and, "to the extent that any of the findings contained in these statements can be considered opinions, the undersigned finds them unpersuasive, as they are not fully supported by the totality of the objective medical evidence." *Id.*

Dillon argues that the ALJ erred in evaluating these opinions, as the opinions were "not whether or not plaintiff could work, but rather, whether or not there were occupations available for individuals with limitations outlined by plaintiffs' doctors." (Doc. 24 at 8.) The Court finds no error in the ALJ's evaluation of the opinions of Mr. Kaver or Ms. Gonzalez. These sources did not provide opinions regarding Dillon's limitations. Instead, they provided opinions regarding whether jobs would be available assuming Dillon had certain limitations. As such, the ALJ correctly found that this evidence did not constitute "medical opinions" under the regulations. The ALJ accordingly did not err in finding the opinions were of no value.

Next, the ALJ considered the opinions provided by Dr. deGrange. The ALJ stated that Dr. deGrange provided opinions beginning in July 2018, which were meant as temporary restrictions placed on Dillon during his recovery from surgery prior to him attaining maximum medical improvement. The ALJ therefore found these opinions were unpersuasive, as they were not indicative of his current level of functioning. (Tr. 19.)

In January 2020, Dr. deGrange found that Dillon had reached maximum medical improvement, and could return to full-time work with limitations. (Tr. 19,1035.) He expressed the opinion that Dillon had the following restrictions: 50-pound occasional lifting/handling, with frequent lifting/handling of 35-40 pounds; occasional lower-level movements and climbing; and

frequent standing, walking, reaching, and gripping.   *Id.*   The ALJ found this opinion "not persuasive," as evidence of Dillon's reports of pain in his buttocks with activity "support that he is limited to lifting no more than 10 pounds occasionally."   (Tr. 19.)

Dr. deGrange provided an additional opinion on September 17, 2020.   (Tr. 20, 1057-59.) At that time, Dr. deGrange expressed the opinion that Dillon could frequently and occasionally lift no more than 20 pounds; could sit less than twenty minutes at a time, and sit a total of two to three hours in an eight-hour workday; could walk two to three city blocks without rest; could stand less than twenty minutes at a time, and stand or walk a total of two to three hours; requires periods of walking around every twenty to thirty minutes for up to ten minutes; can reach less than two hours a day; can manipulate with hands two to three hours a day; requires three or more unscheduled breaks for fifteen-minute intervals; requires a cane or other assistive device for standing or walking; must prop his feet occasionally for symptom relief; would be late to work or need to leave work early three or more times a month; and would miss work three times or more a month due to symptoms.   *Id.*   He indicated that these limitations began on August 23, 2017. (Tr. 1059.)

The ALJ found Dr. deGrange's September 2020 opinion "not persuasive," as there are no physical examination findings to support that Dillon has limitations in reaching, handling, and fingering.   (Tr. 20.)   She further found that the record was inconsistent with the finding that Dillon requires a cane, because Dillon testified that the cane was not prescribed, that he used it only occasionally, and that he was able to go camping less than one month after surgery, go deer hunting, and clear three acres of brush.   *Id.*

Dillon argues that the inconsistencies identified by the ALJ are not in fact inconsistent with any part of Dr. deGrange's opinion.   He contends that the ALJ fails to explain how helping his father clear brush or going camping are inconsistent with any particular parts of the opinion.

The undersigned finds that the ALJ properly articulated how she considered the factors of supportability and consistency in her decision.   As previously discussed, Dillon's admitted activities of clearing brush, camping, and hunting, are inconsistent with his allegations of disabling pain.   An ability to engage in these activities, even if only sporadically and for a short duration, is inconsistent with limitations of sitting or standing for less than twenty minutes at a time and using a cane for ambulation.   Notably, Dillon reported clearing three acres of brush on September 17, 2020—*the same day* Dr. deGrange provided his opinion.   This opinion was significantly more restrictive than Dr. deGrange's January 2020 opinion.   (Tr. 1036, 1038, 1054.)   There is no indication in Dr. deGrange's treatment notes that Dillon's condition worsened during this period.   In fact, Dr. deGrange noted no abnormalities on examination on September 17, 2020.   (Tr. 1054.)

Regarding the ALJ's finding that the upper extremity limitations were unsupported by the record, Dillon argues that the ALJ should have contacted Dr. deGrange to obtain clarification. When the evidence is insufficient to make a determination about disability, the Agency may request additional records, obtain a consultative examination, ask the claimant for more information, or recontact a medical source.   *See* 20 C.F.R. § 404.1520b(c).   But, while the ALJ has some duty to develop the record, the ALJ is not required to obtain additional evidence where, as here, the record is already well-developed.   *See Tellez v. Barnhart*, 403 F.3d 953, 956–57 (8th Cir. 2005).

As noted by the ALJ, there is no medical evidence in Dr. deGrange's records or the record as a whole of upper extremity abnormalities that would limit his ability to reach, manipulate, or finger.   The ALJ had sufficient evidence from which to determine Dillon's RFC and render her decision.   Under these circumstances, the ALJ was not required to contact Dr. deGrange or otherwise develop the record.

Dillon also argues that the ALJ erred in evaluating the January 2020 opinion of consultative psychologist Dr. Cunningham.   As noted above, Dillon reported an "okay" mood and his affect was dysphoric and congruent with his reported mood; his speech was adequate and not tangential; he was cooperative; he had no problems following directions; and he had no memory difficulties.   (Tr. 666-68.)   Dr. Cunningham diagnosed Dillon with mild major depressive disorder.   (Tr. 670.)   He expressed the opinion that Dillon had no problems understanding and remembering simple instructions, carrying out simple instructions, making judgments on simple or complex work-related decisions, understanding and remembering complex instructions, interacting appropriately with the public or co-workers, or responding to usual work situations and changes in a routine work setting.   (Tr. 670.)   He found that Dillon has mild problems carrying out complex instructions due to physical problems.   *Id.*   Dr. Cunningham concluded that Dillon has the capacity to maintain gainful employment.   *Id.*

The ALJ stated that Dr. Cunningham's opinion was "somewhat persuasive," as his own findings on examination showed Dillon had no problems understanding or remembering instructions, making judgments on simple decisions, or interacting appropriately with others. (Tr. 20.)   She found that, because Dillon exhibited problems with focus and concentration during his vocational evaluation, the record supports and is consistent with some limitations in concentrating, persisting, or maintaining pace.   *Id.*

Dillon restates Dr. Cunningham's opinion and the ALJ's discussion of such, but offers no explanation as to how the ALJ's analysis was inadequate.   The undersigned finds that the ALJ applied the proper factors in assessing the persuasiveness of Dr. Cunningham's opinion. Notably, the ALJ found Dillon was *more limited* than found by Dr. Cunningham.   Dillon has failed to point to any error.

Finally, Dillon argues that the ALJ's RFC determination is erroneous because there are no opinions supporting it, and the ALJ relied on her own interpretation of the medical evidence.

The Court recognizes that an ALJ "may not draw upon [her] own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).   The Eighth Circuit has held that the "interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted).   In this case, the ALJ performed an extensive review of the relevant evidence, including Dillon's substantial medical records, before concluding he was capable of a limited range of sedentary work.   This analysis was entirely consistent with the requirements of SSR 96-8p and other applicable regulations.

The undersigned finds that the RFC determination is supported by substantial evidence on the record as a whole.   In her discretion, the ALJ made an RFC finding that did not precisely reflect any of the medical opinions of record.   *See Martise*, 641 F.3d at 927 (ALJ is not required to rely entirely on one particular physician's opinion or choose between opinions).   She considered Dillon's lingering back and buttock pain when restricting him to a very limited range of sedentary work.   The restriction to lifting no more than ten pounds is consistent with Dillon's testimony that he could lift a case of water.   (Tr. 55.)   The ALJ also considered Dillon's testimony regarding his daily activities when determining his RFC.   Specifically, Dillon testified

that he was capable of managing his daily care, preparing meals, driving, leaving the house unaccompanied, shopping in stores, and riding on a tractor with his father.

The ALJ's RFC determination is *more restrictive* than that of the prior administrative findings by Drs. Cole and O'Day, and Dr. deGrange's January 2020 opinion.   It is consistent with Dr. deGrange's treatment notes, revealing no abnormalities on examination but persistent complaints of buttock pain and sporadic low back pain.   The mental limitations found by the ALJ are supported by the findings of Dr. Cunningham.   Dillon points to other evidence in the record that is supportive of his application for benefits, but he has failed to demonstrate that the ALJ's decision was outside the available "zone of choice."

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.


/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of March, 2023.